63 437
66h 624

## In the matter of the BLOOMFIELD AND ROCHESTER NATURAL GAS LIGHT COMPANY *vs.* DAVID H. RICHARDSON and others.

The Rochester and Bloomfield Natural Gas Light Company was incorporated under the general gas companies' statute of 1848, for the purpose of utilizing the natural gas flowing from a gas spring or well in the town of Bloomfield, county of Ontario. By a special act of the legislature, passed May 9, 1870, it was authorized to conduct the gas from said well to any city, town or village within thirty miles of that point, by mains, to sell and supply gas for lighting the streets, public parks, dwellings and other buildings therein. It was further authorized to take private property for any of its purposes, and in a proceeding to acquire such private property it was directed to follow the provisions of the general railroad act. The statute declares that any real estate so acquired, for the purposes aforesaid, shall be deemed to be acquired for a public use. The corporation undertook to conduct gas to the city of Rochester, a distance of about thirty miles from its well. In a proceeding to acquire the right of way for its mains through the lands of private owners, and to appoint commissioners of appraisal, it was held, that the purposes, objects and business of this corporation were a "public use," within the meaning of the constitution; and that the statute authorizing it to take private property for the purposes of its said business was constitutional and valid.

The power to exercise the right of eminent domain, where such right exists, may be conferred upon a corporation acting in its own interests, and for purposes of private gain.

In order to constitute a "public use," within the meaning of the constitution, it is not necessary that the improvement should directly benefit the people of the whole State, but the direct public benefit contemplated may be confined to a particular community.

When the use to which private property is to be appropriated is a public one, the legislature is the sole judge of the necessity or expediency of the appropriation.

In general, the legislature is the sole judge of what constitutes a public use. But to a very limited extent, the constitutionality of a statute purporting to confer the right to take private property for public use, is a judicial question. If the effect of a statute is to divest one citizen of his property for the benefit of another, without the semblance of any public benefit, or when the absence of all pretense of public benefit is clear and palpable, it will be the duty of the courts to declare the act unconstitutional and void, not as an unauthorized taking of private property for public use, but as an attempt to take it for private use. But in order to authorize the court to interfere, it must be clear and manifest that no public use was contemplated.

The provision of the constitution in question does not purport, and was not designed, to define or limit the nature of the use for which private property

Bloomfield &c. Natural Gas Light Co. *v.* Richardson.

can be taken, but only to require, absolutely, that in all cases where the property is taken for a public use, just compensation shall be provided for and made.

*It seems* that if any business or enterprise can fairly be supposed to be a matter by which the public of a particular community, or various communities, may be benefited, or if it has for its object, or one of its objects, a matter which may be for the public benefit, or which may constitute a public improvement, then such business or enterprise is a "public use," within the meaning of the constitution, although the parties engaged in it may be actuated solely by the inducement of private gain.

APPEAL, by the defendants, from an order of the special term of Monroe county, appointing commissioners to appraise the compensation to be paid to Richardson and Calkins, for the right to lay a gas main in the highway in front of their premises, leading from Henrietta to Rochester.

*John Norton Pomeroy,* for the appellants.

The statute authorizing the petitioner to take private property, even upon a full compensation, without the consent of the owners, is utterly null and void. The business, the purposes and the objects of the petitioner are not a "public use" within the meaning of the constitution, which authorizes private property to be taken upon making compensation.

The following principles have been so firmly settled that no extended argument upon them is necessary.

A. When the purpose for which private property is to be taken is confessedly a "public use," the legislature is the sole judge as to the expediency, the propriety, the necessity of the taking; the courts must obey the legislative mandate. But when the question is *whether the use is a public one or not,* the decision of the legislature is not final. Whether the use to which private property has been or is to be appropriated, is "public" or not, is purely a judicial question, and must be determined, in each case, by the courts, if a proceeding involving the question

Bloomfield &c. Natural Gas Light Co. *v.* Richardson.

arises. Any other construction would render the constitutional restriction a nullity, and would leave the legislature omnipotent to appropriate private property for any purpose which it chose to call "public" in a statute. Although there are a few dicta which seem to hold the other way, and especially an observation of Chancellor Walworth in an early case, yet this doctrine is now settled by the overwhelming weight of authority, as well as on principle. (*Talbot* v. *Hudson*, 16 *Gray*, 417, 421. *Sadler* v. *Langham*, 34 *Ala.* 311, 326–328. *Bankhead* v. *Brown*, 25 *Iowa*, 540. *Concord R. R.* v. *Greely*, 17 *N. H.* 47, 57, 61. *Coster* v. *Tide Water Co.*, 3 *C. E. Green* [*N. J.*] 54, 63–71. *Harris* v. *Thompson*, 9 *Barb.* 350, 362. *Matter of Townsend*, 39 *N. Y.* 171, 174, 181, 182. *Am. Law Review, No. for January*, 1872, *pp* 197, 198, *et seq.*)

B. The taking or appropriation of private property need not be made by the government—the legislature—directly, but the right may be assigned or delegated to corporations or to private persons. This doctrine was established after much struggle, but is now too firmly settled to be questioned. It should be remembered, however, that the delegation may be to private persons as well as to corporations. Corporations possess no such capacities as make a use in their hands " public," which would not be equally so in the hands of any individual person. (*Bloodgood* v. *M. and H. Railroad Co.*, 18 *Wend.* 9,) and many other cases.

C. The use, in order to be "public," need not be for the benefit of the State, in its organic capacity; but it is sufficient if it be for the benefit of the individual persons who form the political society. Senator Tracy strove manfully, in *Bloodgood* v. *R. R. Co.*, (*supra,*) to establish the contrary doctrine, but failed. This one doctrine has made private property more precarious in the United States than in any other civilized country. It is the plain

duty of the courts to see that it be not so extended as to destroy the constitutional limitation.

Assuming the foregoing principles, I proceed to inquire what uses are public, and what are not.

I. The following, and they only, have been held to be public, within the meaning of the constitutional provision. I separate them into groups or classes, so that the general principles upon which each case rests may be clearly seen and distinguished.

1. All purely governmental purposes, whether carried on by the State itself, through some of its departments, or by local governments, such as those of counties and towns. Under this class it has been held that private property may be taken for a public school-house, ( *Williams* v. *School District*, 33 *Vt.* 271 ;) for a fort, (*Gilmer* v. *Lime Point*, 18 *Cal.* 229 ;) and this class would undoubtedly include buildings for state-houses, capitols, court-houses, public prisons and the like.

2. All means and methods for transit of passengers or goods, whether constructed by the State, like the Erie canal, or by private enterprise, like most railroads. This class includes public highways, turnpikes, bridges, railroads, canals, docks and wharves.

It is plain that in every possible instance, under this class, the use is for the whole public, and not for any definite or indefinite limited portion of it; because, although as a matter of actual experience, persons living near the structure use it and are benefited by it more than others, yet none are or can be shut out from its use. Every individual may travel over these means of transit, or use the wharves, and has a common law right to do so, either without toll of the bridge or highway, &c., free, or by paying the customary toll or fare in the cases where that is legally required. It is an entire perversion of terms, and a complete confusion of legal ideas, to say of any highway or bridge however local, that it is for the use only of the

community which surrounds it. The shortest and most unfrequented highway is for the use and benefit of the whole State. (*Bloodgood* v. *R. R. Co.*, 18 *Wend.* 9. *Swan* v. *Williams*, 2 *Mich.* 427. *Concord R. R.* v. *Greely*, 17 *N. H.* 47. *Arnold* v. *Bridge Co.*, 1 *Duvall*, [*Ky.*,] 372,) and many other cases.

3. Measures of police, and especially those which are designed to promote health. In this class there are several particular instances, not resembling each other in their outward and physical features; but it will be seen that in all of them the element which makes the use "public," belongs to that branch of governmental functions termed police, and in most of them this element is purely sanitary. This class includes,

(1.) Water works to supply cities with water. Health—the necessity of pure and wholesome water as much as of pure and wholesome air—and not mere convenience, and emphatically not gain, is the public use which renders these works and enterprises valid. (*Reddall* v. *Bryan*, 14 *Md.* 444. *Burden* v. *Stern*, 27 *Ala.* 104. *Lumbard* v. *Stearns*, 4 *Cush.* 60. *Mayor &c.* v. *Bailey*, 2 *Denio*, 452, *per Gardiner, President.*)

(2.) Provisions and means for draining swamps, marshes and low lands. (*Hartwell* v. *Armstrong*, 19 *Barb.* 166. *People* v. *Nearing*, 27 *N. Y.* 306. *Anderson* v. *Kerns Draining Co.*, 14 *Ind.* 199, 202.) This last case expressly holds that draining for sanitary purposes is a public use, but for other purposes is not.

(3.) Provisions and means for removing dams and permitting stagnant and offensive waters to flow off, thus abating a great public nuisance, and rendering a whole district salubrious which was before pestilential. (*Miller* v. *Craig*, 3 *Stockt.* [*N. J.*] 175. *Talbot* v. *Hudson*, 16 *Gray*, 417. *Dingley* v. *Boston*, 100 *Mass.* 544.)

(4.) Drains and sewers in cities. (*Hildreth* v. *Lowell*, 11 *Gray*, 345.)

(5.) Public burying grounds. (*Edwards* v. *Stonington Cemetery Ass., 20 Conn.* 466.)

The cases generally, that is, throughout the United States, go no further than the foregoing; but,

4. In Massachusetts, Connecticut, and perhaps in a very few other States, statutes have existed from an early day, known as the "flowage acts," by which land is permitted to be taken for mill-dams, &c. These statutes form part of the peculiar local systems of those states, and have been sustained on the ground that the means of promoting manufactures was a public use. *See Hazen* v. *Essex Co.*, (12 *Cush.* 475;) *Boston Mill-dam Co.* v. *Newman*, (12 *Pick.* 467,) and many other Massachusetts cases; *Olmstead* v. *Camp*, (33 *Conn.* 532;) *Todd* v. *Austin*, (34 *id.* 78.)

These doctrines have not been followed to any extent in other States. In Alabama a similar statute was recently declared void, although it had stood for a long time. (*Sadler* v. *Langham*, 34 *Ala.* 311, 323, 325, 326-328, 330.) In Tennessee a very early case had held that a grist-mill was a public use, but that a saw-mill or a paper-mill was not. (*Harding* v. *Goodlett*, 3 *Yerger*, 41.) And even the former part of this decision was recently overruled in (*Memphis Freight Co.* v. *Memphis*, (6 *Cold.* [*Tenn.*] 419.) Finally, this New England doctrine has been expressly repudiated in New York, (*Hay* v. *Cohoes Co.*, 3 *Barb.* 42, 47;) and see on the special subject, *Cooley's Constitutional Limitations, p.* 534.

II. The business, objects and design of this gas company do not make it a "public use," within the principles of any of the foregoing classes, nor within the doctrines of any authoritative decision.

1. "Public use" means something more than public convenience, public benefit, or public interest. It implies and includes a notion of necessity, of exigency. Much stress is laid, by the respondent, upon the fact that the "use" need not be for the whole people of the State; that

Bloomfield &c. Natural Gas Light Co. *v.* Richardson.

it may be for a limited portion of that people and still be "public." This is true; but from the foregoing classification it is made plain in just what cases the use may be for a limited number and still be public. The criterion is found in the nature of the use itself. It is utterly untrue that any and every kind of use may be necessarily confined to a limited portion of the people of the State, and yet be "public." The classification which I have made enables us to draw the dividing line, as follows; and I submit this as an accurate generalization of the doctrine. The object, to be a public use, must either be, (1,) something which, *ipso facto*, by its mere existence, and of necessity, produces some great common good to all the inhabitants of a particular district, such as sanitary measures for draining, water supply, and the like; or, (2,) it must be something in which the public at large—that is, every individual if he pleases—has a legal interest and right, such as a highway, railroad, and the like; or, (3,) it must be something directly governmental, such as a fort, a state-house, and the like. I submit, that these three general divisions include and exhaust all possible cases. In the first of them alone can the use be limited to a defined portion of the State.

If we go beyond these, we cannot stop short of every trade, business, manufacture, profession and occupation, by means of which divers individuals and communities are accommodated. The moment we break over the line which I have indicated, and which the cases recognize with greater or less distinctness, we cannot logically stop short of any and every lawful trade or calling. In addition to the cases cited above, see in particular the following, in which the nature of a public use is discussed at large, and which fully sustain my position. (*Gilmer* v. *Lime Point*, 18 *Cal.* 229, *per Baldwin, J.*, 251, 252. *Coster* v. *Tide Water Co.*, 3 *C. E. Green*, 54, *per Zabriskie, Ch. J.*, 63–67. *Memphis Freight Co.* v. *Memphis*, 4 *Coldwell*,

419, 423, 425. *Bankhead* v. *Brown*, 25 *Iowa*, 540. *Sadler* v. *Langham*, 34 *Ala.* 311, 323, 325.)

To the foregoing positions, so fully supported by reason and by authority, there are opposed two recent flowage cases in Connecticut. (*Olmstead* v. *Camp*, 33 *Conn.* 532, and *Todd* v. *Austin*, 34 *id.* 78.) In the latter case the necessities of the position, and the logic of the judge forces him to hold, and he does hold without wincing, that "whenever a person carries on any business, and furnishes articles which members of the community find it convenient or advantageous to buy, then his business is a public use." This is the *reductio ad absurdum*. It is saying that the legislature may empower a person to take private property to carry on every trade or occupation conceivable. It utterly abolishes the word "public" from the constitutional provision. Yet to this conclusion the court must come, this doctrine it must adopt, if it passes beyond the simple rules and criteria which I have indicated, and holds the petitioner entitled to take our property.

2. There is nothing in the nature of the petitioner's business which makes it a public use. It is simply, at most, a convenience to certain persons dwelling in Rochester, where there is already a supply of gas. It is perhaps more convenient to use gas than candles, or sperm oil, or even kerosene oil, and that is the whole of it. The same doctrines which enable the petitioner to take private property in order to facilitate its business, would have enabled the manufacturer of mould candles to take private property because his commodity was an improvement upon the old fashioned dip, or the seller of sperm oil to take private property because his commodity was more convenient to use than candles.

There is no resemblance between this case and that of a water supply. Water is an absolute necessity, not a convenience; it is a sanitary necessity.

Bloomfield &c. Natural Gas Light Co. *v.* Richardson.

Nothing can be said in favor of the petitioner's right which would not apply with equal force to every kind of manufacture, to every kind of lawful business, to banks, to mercantile stores, to taverns, and to a thousand other pursuits.

If the petitioner can take its right of way through our lands, then every gas company could have power to condemn private property for its works, offices, &c., which has never as yet been attempted, nor claimed; nay, the petitioner could have power to take the gas well at Bloomfield from its owner, or even to take the whole property of the Rochester gas company to its own use; because if the use be public, there is no limit to the amount or nature of the property which may be taken. In this manner the pretended right is tested, and the statute conferring it is shown to be void, because it necessarily leads to such consequences.

I submit, that the order appealed from should be reversed, and the petition for the appointment of commissioners of appraisal should be denied.

*Theodore Bacon*, for the respondent, cited *Beekman* v. *Saratoga and Schenectady R. R. Co.*, (3 *Paige*, 45, 73–75;) *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, (18 *Wend.* 9, 13–16;) *Buffalo and N. Y. R. R.* v. *Brainard*, (5 *Seld.* 100, 109;) *The People* v. *Smith*, (21 *N. Y.* 595;) *Lumbard* v. *Stearns*, (4 *Cush.* 60;) *Gilmer* v. *Lime Point*, (18 *Cal.* 229.) It was also maintained by counsel, that the corporation petitioner, being given, by special act of the legislature, (*Laws of* 1870, *ch.* 757, *p.* 1878,) and by the general law, (3 *Edm. Stat.* 852, § 18,) the right to lay its pipes in highways, both in the city and the country, might lawfully do so without acquiring further rights from adjoining proprietors; but it was conceded that the claim could not be asserted in these proceedings instituted by itself.

Bloomfield &c. Natural Gas Light Co. v. Richardson.

*By the Court,* TALCOTT, J.   The respondent is a corporation, created under the act of 1848, to authorize the formation of gas companies.   The object of the formation of the company was to utilize the illuminating and combustible gas, naturally flowing from what is termed a gas well, situate in Bloomfield, in the county of Ontario, and about thirty miles from the city of Rochester.   By an act passed May 9, 1870, to grant additional powers to the Bloomfield and Rochester Natural Gas Light Company, it is provided that the company, in addition to the powers and franchises conferred upon it by the general statute, and the acts amendatory thereof, should have the right and power to conduct the gas from said gas well to any city, town or village within thirty miles therefrom, and situated within the counties of Ontario, Livingston or Monroe, by mains, conduits or pipes in any such city, town or village, to sell and supply gas for lighting the streets, public parks, dwellings and other buildings therein; and that in any such city, town or village, to or through which the corporation should conduct its gas, it should have the rights and powers conferred by section 18 of the said general statute, and the acts amendatory thereof, the same, to all intents and purposes, as if said gas were manufactured, and said corporation thus located, and its business operations conducted, in said respective cities, towns or villages. The act further provides that, in case it shall be necessary for the corporation to take private property for said purposes, and it cannot agree with the owners and occupants, then such proceedings may be had, for the purpose of acquiring the right to take such property for any purpose authorized by this act, or the said general law, as is provided for acquiring the title to real estate by railroad corporations, under the provisions of the general railroad act; and that any real estate so acquired for the purposes aforesaid, shall be deemed to be acquired for public use.

The corporation is engaged in the enterprise of convey-

ing the gas from the well to the city of Rochester, and for such purpose desires to lay its mains under the surface of a highway leading from Henrietta to the city of Rochester. The appellants are the owners of certain lands along which the highway passes, and own the fee of the land in front of their premises, to the center of the highway.

The corporation desires to lay its mains under the surface of that portion of the highway the fee of which is in the appellants, and has been unable to agree with the appellants as to the amount of compensation to be paid to them for the right and privilege. The corporation, therefore, applied to the special term for the appointment of commissioners of appraisement, in the manner prescribed in the general railroad act. An order appointing such commissioners was made by the special term, from which order the appellants appeal.

On this appeal, the question presented is, whether the right thus sought to be acquired by the corporation is a public use, so that the legislature is authorized in furtherance of it, to exercise the right of eminent domain, and to confer the power to exercise that right upon the respondent. Most of the principles involved in the discussion of this appeal have been authoritatively settled.

In *Bloodgood* v. *The Mohawk and Hudson River R. R. Co.*, (18 *Wend.* 9,) it was settled by the court of last resort that the power to exercise the right of eminent domain, where such right exists, may be conferred upon a corporation, acting in its own interests, and for purposes of private profit. In that case the principle was declared in a resolution adopted by the court, and afterwards made a part of its judgment, in the following words : " It is declared and adjudged that the legislature of this State has the constitutional power and right to authorize the taking of private property for the purpose of making railroads and other public improvements, paying the owners of said property full compensation therefor, whether such public

improvements are made by the State itself, or through the medium of a corporation or joint stock company." The same doctrine had been previously declared in *Beekman* v. *The Saratoga and Schenectady R. R. Co.*, (3 *Paige*, 45.)

This power had been assumed by the legislature from time to time, from the early history of the State. For instance, in 1792 the legislature conferred the right of eminent domain on certain lock navigation companies. (2 *Greenl. Laws of N. Y.* 427.) In 1825 the Granville Canal Company was incorporated with the right of eminent domain. (*Laws of* 1825, *p.* 306.) Since this power began to be exercised by the legislature, two new constitutions have been created, without any change in the provision by which the right to take private property for public use is limited. And the constitution of 1846 was framed and adopted subsequent to the formal adjudication of the court of errors which has been referred to, and which attracted much professional and general attention at the time. So that it may be considered as settled, in this State, that the right to take private property for what is a public improvement, may be conferred upon any parties who are, or propose to be, engaged in the making of such improvement.

It is equally well settled that in order to constitute a public use, within the meaning of the constitution, it is not necessary that the improvement should directly benefit the people of the whole State; but the direct public benefit contemplated may be confined to a particular community. Such is the case in regard to many highways, and especially in cases where the right to exercise the power of eminent domain in the particular case has been conferred upon persons authorized to conduct water from a distance to supply particular localities, and the case of grounds taken for burial places. (*See act of May* 9, 1870.) Nor is it essential to the exercise of this right that

the taking of the property in question should be absolutely necessary to accomplish the object.

It is said by the chancellor, in the case of *Beekman,* before referred to : " It belongs to the legislature to determine whether the benefit to the public is of sufficient importance to justify their exercise of the right of eminent domain in thus interfering in the private rights of individuals. * * * But if the public interest can in any way be promoted by the taking of private property, it must rest in the wisdom of the legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the right of eminent domain. It is upon this principle that the legislatures of several of the States have authorized the condemnation of the lands of individuals for mill sites.

Upon the same principle of public benefit, not only the agents of the government, but also individuals and corporated bodies, have been authorized to take private property for the purpose of making public highways, turnpikes, roads and canals, of erecting and constructing wharves and basins, of establishing ferries, of draining swamps and marshes, of bringing water to cities and villages. In all such cases, the object of the legislative grant of power is, the public benefit derived from the contemplated improvement, whether such improvement is to be effected directly by the agents of the government, through the medium of corporate bodies, or of individual enterprise." The principles stated by the chancellor, as quoted, were afterwards substantially reiterated by the court of errors in the case of *Bloodgood,* (*supra,*) and again by the Court of Appeals in the *Buffalo and N. Y. R. R. Co.* v. *Brainard,* (5 *Seld.* 109,) where it is said : " It belongs to the legislative power of the government to determine for what public purposes private property shall be taken, and the necessity or expediency of such appropriation."

These principles undoubtedly constitute the law of this
VOL. LXIII.            29

State, and furnish the rule by which the provision of the constitution limiting the right to take private property for public use is to be interpreted. Unquestionably, to a certain limited extent, the constitutionality of an act of the legislature assuming to confer this right, is a judicial question. That is to say, a case may be supposed, in fact such cases have arisen, where the legislature has assumed to pass enactments, the effect of which, if valid, was merely to divest one citizen of his property for the benefit of another, without the semblance of any public benefit. When such a case arises, where the absence of all pretense of public benefit is clear and palpable, it will be of course the duty of courts to declare the act unconstitutional and void, not as an authorized taking of private property for public use, but as an attempt to take it for private use. But in order to authorize a court thus to interpose its veto upon a legislative act, it must be clear and manifest that no public use was contemplated, or public benefit is to result.

The provision of the constitution referred to, does not purport, and was not designed, to define or limit the nature of the use for which private property can be taken, but only to require absolutely that in all cases where the property was taken for a public use, just compensation should be provided for and made.

If these suggestions are correct, it will be seen that the power of the court, on questions of this character, is circumscribed within very narrow limits. If the act which confers the right to take private property has for its objects, or one of its objects, the promotion of an enterprise which we can see may be for the public benefit, or in the language of the judgment of the court of errors, may constitute "a public improvement," and it at the same time provides for the payment of a full compensation to be ascertained in the manner pointed out by the constitution, the power of the legislature to make the law must be

Bloomfield &c. Natural Gas Light Co. *v.* Richardson.

affirmed, whatever may be thought of the propriety of its exercise.

We have, then, only to inquire, in this case, whether the object for which the power to exercise the right of eminent domain has been attempted to be conferred upon the "Bloomfield and Rochester Natural Gas Light Company," is one which, although the parties engaged in the enterprise may be actuated solely by the inducement of private gain, can yet fairly be supposed to be a matter in which the public of a particular community, or various communities, may be benefited.

As we have seen, the object of the act conferring the special powers upon this company, is to authorize the conducting of the gas from the natural gas well to any city, town or village within a certain distance and there to sell and supply the gas for lighting the streets and public parks, as well as dwellings and other buildings.

It is unnecessary, in this case, to enter into any discussion as to whether the lighting of the dwelling of an individual, or any number of such dwellings, for the convenience of the occupants, can be considered a public use, since one of the objects of the act in question is to facilitate the lighting of the streets and public places. Is the lighting of the streets and public places a public benefit? The modern practice of the civilized world answers the question. But it is said that a gas company already exists in Rochester, which is ready to supply all gas which may be needed. The same answer, in principle, might be made to almost any attempt to take any particular property for any particular public use. In almost all cases, it could be demonstrated that the particular method by which the legislature has attempted to authorize the public benefit to be conferred, or the particular property proposed to be taken, is not absolutely necessary to the accomplishment of the object. If the court can see that a public benefit is contemplated, the mode and method and

means of producing this result must belong to the legislature to be authorized in its discretion. It may be that the quality or price may influence the legislature to select one method over another. It must be a matter wholly resting in legislative discretion, or else the power is nugatory.

Side by side with the gas mains of this company, leading to the city of Rochester, and, as was stated on the argument, at the very locality where the question in this case arises, are also placed the main conduits of the "Rochester Water Works Company," upon which the legislature conferred the right to conduct water from a distance for the purpose of supplying the city with water, together with the power to take such private property as should be necessary in accomplishing the object.

This court has had occasion to confirm an appraisal of damages under the provisions of the water works charter conferring the right to take private property.

But it might well be alleged that Rochester might be supplied with water from other sources, and even within the city itself. The use of gas for illuminating purposes has become almost a necessity of modern civilization. The right to take the private property of those who own the fee of streets and highways may be absolutely necessary to the public enjoyment of the benefits of this invention, and we think there can be no doubt, upon principle and upon the adjudicated cases, that the conduction of illuminating gas, with such public objects as are specified in the act conferring the special powers upon this company, is within the category of those public improvements to enable which to be carried out, the legislature may confer upon the parties engaged in the enterprise, the right to take the private property necessary to effect the object, upon making compensation according to the constitution.

It is a somewhat remarkable circumstance that the legislature has never yet, so far as we can discover, found it

Bloomfield &c. Natural Gas Light Co. v. Richardson.

necessary to confer this power upon gas companies using manufactured gas. The general act for the formation of gas light companies, passed in 1848, contains no·such power; nor, so far as we have discovered, has it been conferred in any special charter or statute, except in the case of this company, the Westfield Gas Company, (*Laws of* 1860, *p.* 203,) and the Getzville Mining Company, (*Laws of* 1866, *p.* 63,) all three of which are companies formed for conducting natural gas to certain localities. We are not aware that any objection has hitherto been interposed by any owner of the fee of a street or highway to the use of so much thereof as is necessary or proper for the conduction and distribution of gas, until this case; yet it is manifest that if the parties objecting, in this case, can succeed in preventing the use of a part of the land in the highway for the purpose here proposed, so may any owner of the fee of any street in a city or town, prevent the use thereof for a like purpose, though the gas be manufactured within the limits of the city or town.

The fact that no such opposition has been heretofore attempted may be taken as evidence, at all events, of very general acquiescence in the proposition that the conduction and distribution of illuminating gas is a public object and for the public benefit. The mere nominal damages likely to be awarded to the owner of the fee for laying a gas pipe under ground through a highway, have not been a sufficient inducement to the parties technically interested to insist on the formality of an appraisal.

As the supposed constitutional objection which has been considered is the only one of importance which is made, to the appointment of commissioners. in this case, the order appointing them must be affirmed.

Order appealed from affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Mullin, Johnson* and *Talcott,* Justices.]