THE STAMFORD WATER COMPANY, RESPONDENT, *v.* HERBERT STANLEY AND MARY STANLEY, APPELLANTS.

*Eminent domain — the supplying of pure and wholesome water to villages is a public use — the right to exercise the power may be conferred upon a private corporation—1873, chap. 737, and 1876, chap. 415.*

Chapter 415 of 1876, authorizing private corporations formed under the provisions of chapter 737 of 1873, for the purpose of supplying pure and wholesome water to villages, to acquire title to lands, tenements and hereditaments, which may be required for its purposes by the exercise of the right of eminent domain, where it is unable to agree with the persons owning or having an interest therein, is constitutional and valid.

The right of a mill owner to use the waters of a stream as a propelling power at his mill is an incorporeal hereditament connected with the land, and may be acquired, under the provisions of the said act, upon due compensation being made therefor.

APPEAL from an order of the Special Term, in Delaware county, confirming the report of commissioners appointed to appraise the damages sustained by the appellants by the taking of water from a stream above their mills, situate thereon, and diverting the same from its natural flow.

The respondent was incorporated under the provisions of chapter 737 of the Laws of 1873, amended by chapter 213 of the Laws of 1881, for the purpose of supplying the village of Stamford, in Delaware county, with pure and wholesome water. To carry out this purpose it purchased two acres of land about two miles from

the village, situate in Schoharie county, across which a stream flowed. This stream was one of the tributaries and forms a part of the head-waters of the Delaware river. About a mile below this point on the main stream, and in Delaware county, the appellants owned a small custom-mill for grinding grain, and also a partially disused saw-mill. The power for each was supplied from the waters of said stream. On its lands so purchased the respondent built a dam and constructed a reservoir from which the water is to be conducted through an iron pipe to said village of Stamford (a village containing eight hundred inhabitants), and thence through and under the streets and alleys in the same with intent to supply it with water for use in case of fire and for other public purposes, and also to supply with water its inhabitants for domestic use, thereby carrying out the purpose of its incorporation.

Between the reservoir of the respondent and the mills of the appellants is a natural lake or pond formed by the aforesaid and other streams. This lake has been dammed by the latter and used as a storage place for water for said mills in the dry season, during which the natural flow of the stream is not sufficient to supply them. For eight months in the year there is sufficient water flowing in the stream for the supply of the appellants' mills; during the remaining four months the mills cannot be run for want of it. These mills have been constructed and in use for some fifty years.

Before these proceedings were instituted, the respondent had negotiated with the appellants for the purchase of the right by it to use the said water, but the parties were unable to agree. Thereupon three commissioners were duly appointed pursuant to the provisions of chapter 415 of the Laws of 1876, who, after viewing the premises and hearing the proofs and allegations of the parties made their report, awarding to the appellants $500 as damages, which report was confirmed by the Special Term, and from that order this appeal is taken.

*S. H. & F. M. Mayham*, for the appellants.

*I. H. Maynard*, for the respondent.

KENNEDY, J. :

It is urged on the part of the appellants that the respondent is a private corporation, created for private gain, and that it takes property for private as distinguished from public use, and that the provisions of the act, chapter 415 of the Laws of 1876, is unconstitutional, because the right of eminent domain is sought to be exercised in taking private property for private use.

Among the absolute wants of a municipal corporation is that of pure and wholesome water provided for the use of its inhabitants, and water for the protection of property within its limits. This requirement is not one of luxury alone, but is created and exists as a sanitary measure, by the furnishing of which the health as well as the comfort of the citizens is promoted. It is as well a measure of security through which the safety of property is guarded. In seeking this supply it can only be found at those places and in the localities where nature has provided it, and can alone be made subservient to use through artificial means and appliances. If the question of the appropriation of these natural supplies is dependent upon the caprice of the individual who has acquired the prior usufruct use of the waters of a stream or spring, and the power of the legislature to compel its appropriation to the use of the public for the purposes suggested upon due compensation is denied, the instances in the present entire appropriation of water rights by individuals would be rare indeed when this want could be met, except by the payment of exorbitant sums and a compliance with an unreasonable exaction. In many instances, and perhaps a majority of cases, municipalities are supplied with water through private enterprise, and it is no less an appropriation of private property for public use because the supply is procured through a corporation incorporated for that purpose than if by the municipality itself. If the latter may invoke the right of eminent domain, so may the former.

The Constitution provides (art. 1, sec. 7) for the manner in which private property may be taken for public use, and how compensation is to be ascertained for the appropriation. The legislature determining for itself that the supply of pure and wholesome water to a village and its inhabitants is an appropriation of the same for public use, has, in the exercise of its constitutional right, provided the manner

private property, in instances of this character, may be taken for a public purpose.    (Chap. 415 of the Laws of 1876, above quoted.) Is this act subject to the objection that it is in violation of the Constitution and a usurpation of power? We think not. Questions involving the principle have not unfrequently arisen and received judicial construction.

*In the Matter of the Bloomfield and Rochester Natural Gas-Light Company* v. *David H. Richardson et al.* (63 Barb., 437), the plaintiff was incorporated under the general gas companies statute of 1848 for the purpose of utilizing the natural gas flowing from a stream or well in the town of Bloomfield, county of Ontario.    By a special act of the legislature, passed May 9, 1870, it was authorized to conduct the gas from said well to any city, town or village within thirty miles of that point by mains, to sell and supply gas for lighting the streets, public parks, dwellings and other buildings therein. It was further authorized to take private property for any of its purposes, and in a proceeding to acquire such private property it was directed to follow the provisions of the general railroad act. This statute declares that any real estate so acquired shall be deemed to be acquired for public use.    The corporation undertook to conduct gas to the city of Rochester, a distance of about thirty miles from its well.    In a proceeding to acquire the right of way for its main through the lands of private owners and to appoint commissioners of appraisal, it was held that the purposes, objects and business of this corporation was a public use within the meaning of the Constitution; and that the statute authorizing it to take private property for the purposes of its said business was constitutional and valid.

It was further held that the power to exercise the right of eminent domain, where such right exists, may be conferred upon a corporation acting in its own interest and for the purpose of private gain; and that within the meaning of the Constitution it is not necessary that the improvements should directly benefit the people of the whole State, but the direct public benefit contemplated, may be confined to a particular community. That when the use to which private property is to be appropriated is a public one, the legislature is the sole judge of the necessity and expediency of the appropriation.

Judge TALCOTT delivering the opinion of the court said: "Most of the principles involved in the discussion of this appeal have been authoritatively settled. In *Bloodgood* v. *The Mohawk and Hudson River R. R. Co.* (18 Wend., 9,) it was settled by the court of last resort, that the power to exercise the right of eminent domain, where such right exists may be conferred upon a corporation acting in its own interest and for purposes of private profits. * * * It is equally well settled that in order to constitute a public use within the meaning of the Constitution, it is not necessary that the improvement should directly benefit the people of the whole State, but the direct public benefit contemplated may be confined to a particular community. * * * It is said by the Chancellor in the case of Beckman,* before referred to, 'it belongs to the legislature to determine whether the benefit to the public is of sufficient importance to justify their exercise of the right of eminent domain, in thus interfering in the private rights of individuals. * * * But if the public interest can in any way be promoted by the taking of private property, it must rest in the wisdom of the legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the right of eminent domain." (*People ex rel. Herrick* v. *Smith*, 21 N. Y., 595.) The principle decided in this case meets the one in hand, and I am not aware that it has ever been questioned. Many cases are to the same effect. (*Matter of the Waverly Water-Works Company*, 85 N. Y., 478; *Matter of the Village of Middletown*, 82 id., 201; *In the Matter of Cooper*, 28 Hun, 515.)

We have examined the cases referred to by the learned counsel for the appellant and find nothing in them in conflict with the views above expressed.

The case of *Embury* v. *Conner* (3 N. Y., 501), was where private property was taken, not for public use in any sense of the term. It was attempted to acquire private property under the guise of eminent domain, and by transfer, to vest the title in an individual. (*Taylor* v. *Porter*, 4 Hill, 140.) The authorities of the town sought to take private property, and appropriate it for the purpose of a private road. *In the Matter of Deansville Cemetery Asso-*

---

* *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige, 45.

*ciation* (66 N. Y., 569) the court held that land taken for the purpose of a burial place for different parties who might purchase lots, and the title to which when purchased rested in the grantee and was the subject of alienation, was no more the taking of private property for public use than it would be if the lands were taken for the burial place of a single person; or in other words, that lands taken for burial purposes were not for public use, and that the exercise of eminent domain for the purpose was prohibited by the Constitution. The court say: "It (the land) is to be vested in trustees, with power to divide into lots, and sell these lots to individual owners. It is difficult to see what interest the public will have in the lands or in their use. No right on the part of the public to buy lots or bury their dead there is secured." The distinction in principle between this case and the one under consideration is easily appreciated. In this case we think the property proposed to be taken is to be applied for public use, and that the right of eminent domain being so declared by the legislature, is applicable to its appropriation for the purposes intended.

The language of section 3 of chapter 415 of the Laws of 1876 is: " In all cases where the said company shall be unable to agree with the persons owning or having an interest in any lands, tenements or hereditaments," the Supreme Court at Special Term may appoint commissioners, etc.

The right of the appellant to use the water of the stream as the propelling power at their mill is an incorporeal hereditament connected with the land, and this easement is property within the meaning of the Constitution, and its appropriation under the power of eminent domain entitled the owner to compensation. (*Story* v. *The N. Y. Elevated R. R. Co.,* 90 N. Y., 122; prevailing opinion of DANFORTH, J., pp. 146, 147.)

The property of the appellant which was damaged was located in the county of Delaware, and while it is true that the point of the diversion of the water is in the county of Schoharie and out of the Sixth Judicial District, we think the order appointing the commissioners in that district was properly made, because the damage sustained occurred within the district.

The question of damage was properly disposed of by the commissioners.

The order confirming the report of the commissioners is there-fore affirmed, with ten dollars costs and disbursements.

HARDIN, P. J., and FOLLETT, J., concurred.

Order confirming the report of the commissioners affirmed, with costs.